Good morning, everyone. Seated. I'll call the next case. Case number 0833 people versus if both attorneys would step up, identify yourselves for the record. Your Honor, Kristen Muller from the Office of the State Appellate Defender on behalf of Mr. Joseph Costa. Good morning, Your Honors. Good morning to both of you. Each side will have approximately 15 minutes to present oral argument. From that, Ms. Muller, you may save out some time for rebuttal. Please. Yes, please. The issue at the heart of this case is whether a defendant's failure to act under the violation of the bail bond statute is willful when he or she is incarcerated. The Illinois Supreme Court has already answered this question in the negative and found that such a failure to surrender cannot be willful. This offense is governed by section 32-10 of the criminal code, which makes it an offense when the defendant forfeits his bail by failing to appear for a court date and then willfully fails to surrender himself within 30 days. In People v. Ratcliffe, the Illinois Supreme Court ruled that a defendant does not willfully fail to surrender when he or she is incarcerated. There, the defendant was released on bail. He appeared several times, but failed to appear for his trial date. The bail was forfeited, a warrant was issued for his arrest, and he was subsequently charged under section 32-10. The evidence showed that he was in jail from June 1st to July 28th. He was released for nine days and then jailed again on August 6th. This court and the Supreme Court both held that this could not be willful because he was incarcerated and unable to appear. The Supreme Court also rejected the trial court's finding that the defendant could have appeared during that nine days that he was released. Did the defendant have any intention of coming back to Illinois? In Ratcliffe or in my case? In yours? Yes, he did, Your Honor. He testified that he was intending to come back. His trial attorney had advised him of the consequences of not doing so within 30 days. And he already had his ticket to fly back in? He did not. He testified that he bought his travel arrangements on the day of. But an intent to return is not required under the statute. And it's not something that the Illinois Supreme Court considered in Ratcliffe either. They rejected the finding that those nine days he should have used to return. And it's the same thing here. Mr. Costa had until December 15th to return. Well, is there something slightly different about Ratcliffe in that on the day of the 30th, the first day he was already in custody when, when the bail forfeiture was entered, wasn't he already in custody? He was in custody. Yes. This case is not like that. Correct. He was in Hawaii. Correct. And didn't he say he wasn't planning on coming back and he wanted to get as far away as he could or something? I thought he said that he left and he wasn't planning on coming back. No, Your Honor. He wasn't there conflicting testimony. No, not on that point. He testified and he said, I was intending to come back. His trial attorney had told him that he had to be back within 30 days to avoid. Maybe I'm confusing his testimony about knowing he had a court date and knowing he wasn't going to appear on that date when the bond forfeiture was entered. Yes. On the November 15th. He knew he had a court date that day. Yes. And he purposely did not appear and he was in Hawaii. It was his understanding that if he didn't appear, he had 30 days to be back. But it was also his understanding that he had to be there the day the bond forfeiture warrant was at. Correct, Your Honor. And the consequences of that are forfeiting the bail, which happened. Yes. Yes. It does not equate to a criminal offense under 32-10. Let me ask you this. Didn't the trial judge here determine that this was a factual issue, whether he was, he willfully bailed to surrender for the jury to decide? Yes, but Your Honor, the trial judge also incorrectly advised the jury to rely on this holding from People v. Brodigan, which deals with a different statute. It doesn't deal with this statute. And I'm sorry. And it also, frankly, I think it's bad law. It says it relies on statutes from Louisiana, Texas and one other state. It says that this issue has never been ruled on, completely ignoring the decision by another district of the appellate court in People v. Mitchander. So it also. What do you think? Do you think that this is a question of fact for a jury to decide or is this a question of law for the court to decide whether someone willfully fails to surrender? I think under the facts of this case, when the defendant is not given the full 30 days, it is a question of law. They have to have the full 30 days. If this had been a case where it was passed that 30 days and you needed to consider the willfulness, yes, then, then maybe there is a fact for the jury. But here he has the full 30 days. He could have decided days one to 28. I am, I'm not going to go back. I'm not going to go back. And then finally have a change of heart on day 29 and come back. And he cannot be charged under section 32-10. And sorry, and the legislature even said in a different subsection of the statute, this doesn't stop the court from pursuing contempt charges. There are other ways to punish his conduct, but his conduct does not qualify under this statute. At the jury instruction conference, counsel for the defendant asked for an instruction that kind of goes along with the Radliff case, correct? I don't remember from the transcripts. Did the counsel for the defendant cite Radliff to the court when he asked for that, when he asked for that instruction? Yes, Your Honor. I think that he might have cited the appellate court decision, but as far as willfulness goes and incarceration, that was in line with the Supreme Court's decision, but he did cite Radliff. He cited it and the court denied it. Correct. The trial court agreed with the prosecutor at trial that they should follow Brodigan, which again is section 110-7 of the Code of Criminal Procedure. It doesn't apply. It's dealing with a money judgment. This is a criminal offense. Also, I guess another case that was relied on by the state was People v. Alboron. That's also factually distinguishable, although it does actually address the right statute. There the defendant was never incarcerated. He pretty much never showed up before his bail was forfeited and after, and he testified. He just didn't come to court because he stayed home and he went out in the streets. And that court distinguished its facts from the Radliff decision based on the lack of incarceration and said that the mere failure to surrender within the 30 days isn't enough. It must be willful. But when you're just out in the streets 30 days and then past 30 days, that's obviously willful. And that's again, distinguishable here because my client was incarcerated on December 12th. It was physically impossible for him to come and surrender himself to the court at that point, but he had two more days under the statute. I guess if the court doesn't have any more questions, I would just reserve time for rebuttal and just add that we think that his conviction should be vacated outright. And also just as to the fines and fees argument in the third part of my brief, there's five, three fines or two fines and three fees that the state agrees should be. Yeah. But if, if we were to reverse outright, would we have any necessity to consider those? They would be automatically vacated, wouldn't they? Yeah. All right. So I mean, is it, is the issue alive? Well, but there's other convictions though. This case, this conviction was entered at the same time as other convictions. He'll know fines were imposed on those convictions. You're right. Yes, Your Honor. He still has two convictions under disappeal for harassing a witness and that's unaffected by our lives. Yes. Sorry. But the state agrees that they should all be vacant. Just the five. Yes. Yes. Yeah. Thank you. Thank you. Ms. Gaines, how was your vacation? Lovely. Thank you very much. I appreciate your rescheduling. I hope we didn't cut it too close for you though. That's okay. I'm ready. It is, it is the people's position, Your Honors, the determination of whether or not Mr. Costa committed a violation of bail bond and willfully failed to surrender within 30 days was absolutely a factual determination based and to be determined by the jury in this case, based on the facts and circumstances presented to them. In viewing the evidence in the light, most favorable to the prosecution, any rational trier fact could have found these elements beyond reasonable doubt. The VOBB statute requires the state to show that bond was set, that the defendant forfeited that bond and that he willfully failed to surrender within 30 days. Now the defendant had to- Let me ask you this. Would you agree that prior to the expiration of 30 days that this is an inchoate offense? No, I would not. Prior to the, oh, I'm sorry. Prior to the expiration of the 30 days, would you agree that this would be an inchoate offense? I think it has to depend again. I think it's not that simple. The answer to that is not that simple. You have to look, he does not have, it would be our position, he does not have an unfettered 30 days. You have to look at his conduct and the facts and circumstances surrounding where he is, what he's doing in determining whether or not a willful failure to surrender occurs. If the statute says that you have to prove beyond a reasonable doubt that he willfully failed to surrender within 30 days, how can you say he doesn't have 30 days? Well, he has, he has 30 days, but you have to look at the circumstances surrounding what's happening during those 30 days. Well, does Ratlin really suggest that? Doesn't Ratlin say that he does have an unfettered right to appear within 30 days and that the state really isn't capable of proving this offense unless it until the 30 days have passed? Isn't that really what that case stands for? No, I think Ratliff really stands for it. And Ratliff is a case the Illinois Supreme Court has spoken to regarding that it is a question of fact, whether or not the defendant willfully, willfully failed to appear within 30 days and violated a bail bond. If you look at Ratliff, there are three very key distinguishing factors in Ratliff that make it inapplicable to this case. One is that he was in custody the day the bail forfeiture was entered. And that is a very important distinction. Mr. Costant, in Ratliff, the defendant had a court date of, I think, July 24th. He is in custody on another case. He talks to his lawyer from legal aid. He has an attorney. He says to his legal aid attorney, I'm supposed to be in court on the 24th. And the legal aid attorney says, don't worry about it. You're in custody. You can't be there. I'll get another court date. You don't have to appear. And it was based on that, that those nine days that he was out during that 30 day period that the Illinois Supreme Court in reversing the trial court determined that that didn't necessarily show that he wasn't going to willfully fail to surrender because he was told by his legal aid attorney, you don't have to go to court. Mr. Costa was never told that. Mr. Costa had two bonds set. On the date he was supposed to appear, he had, he was well on his way to Hawaii. He had, by his own admission, he left the state of Illinois without permission to the trial court. And I would, I would point out that the fact that he didn't request permission to leave certainly evinces his intent that he is not returning within 30 days. But does he still have those couple of days to change his mind and return? Well, if you look at the fact and circumstances surrounding that, the evidence in this case wouldn't establish that, wouldn't establish that he was going to do that. He was, he was. Can you prove beyond a reasonable doubt that a person's not going to change his mind? I mean, how can you possibly argue that? I think objectively you need to look at the, again, the facts and circumstances surrounding that. This man is not in Cook County walking around or in Illinois or in Wisconsin. He is not even in the continental United States. He is in, he's in Hawaii. How long does it take to get from Hawaii to Chicago? Depends if you can get a direct flight. It takes about nine hours, right? If you can get a direct flight. I mean, you can't. Does it take more than three days? I don't know. I mean, it depends on what he's, I mean, you have to look at, look at what he's done and look at what he said. I mean, his testimony. What you're saying is that, is that the jury, the jury can decide that he never would have. Yes, correct. But that's not what the statute says. The statute doesn't say that your, your obligation is to prove that he never would have. The statute says your obligation is to prove that he did not. Well, it's a different thing. It doesn't have to do with intent. It says that he willfully failed to, to, to appear. And I think the only way you can read it is, is that he's got 30 days to appear. Well, I think what you'd have to look at is within those 30 days, you have to look at his conduct within those 30 days. Well, I think there's a problem. This is the problem. The statute says within 30 days, we can't change that language. And I think what does within 30 days mean? And I think that's what the Supreme Court was trying to say is that there's no way the state can prove within 30 days, unless and until you've had that time passed. I think that's the key to the case is within 30 days, not willfully fails to surrender. I think that's a factual question, but the problem here is within 30 days. And that I think is where you're stuck. Well, I think within, and I guess too, within that, then what that really allows a defendant to do, the problem is what that allows to have happen is exactly what has happened here is it allows a defendant to take a vacation when he should be on bond in Hawaii, and then say, when, when he's arrested on day 27 by law enforcement who are tracking him down as a fugitive from justice, when they arrest him on day 27 to say, I'm going to hide now behind the veal. That may be the case in your argument should be with the legislature. Then if you think that's not right, if you think he shouldn't have that 30 days, go talk to Springfield. But the law is right now that if he does that, if he goes to Hawaii, in this case, he loses a million dollars, doesn't he? That's correct. Okay. So that's the punishment. He loses a million dollars. He doesn't lose it unless and until the bond breacher violation is the conviction would be affirmed. Right. And, and under, under, uh, uh, Brodigan, he probably could lose that million dollars, but, but because, because it's not without his fault, but the statute said, and the statute says that, you know, when you, when you blow your bail, you, you lose the money. But the statute also says that to be prosecuted, to be prosecuted, you have to willfully fail to surrender within 30 days. Those are two different, you know, the argument the state makes that he's getting away with something here. I'm sorry. Take that to the legislature. That's not an appropriate argument here. Oh, well, again, the legislature gave him 30 days. Let me ask you this. Let's say he's in Wisconsin. Okay. Okay. And, uh, you know, now I'm going to get from here. Let's say he's in Wisconsin and, uh, you know, he's in violation of his bail and he gets arrested. Um, and, uh, uh, in 20 days, 20 days after he violates his bail. Okay. Um, and he, and he's, and he's, uh, brought back, uh, to Chicago and he appears in front of judge, I think it would be can in this case, uh, two days later, can you prosecute him? If he's brought in with it within the 20, if he's brought back in within the 20 day period or the 30 day period, then, then, then no. Okay. Cause that's, so then, so wait a second, hold on a second. So, okay, fine. So if the, if, if he waives extradition, he's in Wisconsin and he waives extradition and he's brought back within the 30 days, uh, you can't prosecute. Okay. So what if he's in Wisconsin and there's 10 days left of the 30 days and he waives extradition and they sit on him there for, for 10 days. What it would take in 10 days to extradite him back and they have to, in the 31st days brought back before judge Cannon, can you prosecute him? I would say, I would say yes. Oh, so you're saying that whether or not he can be prosecuted depends on how fast the extraditing officer brings him back to the jurisdiction. I think it depends again on the facts and circumstances of where he is. That's where it allows him within, within an hour to be back here. There's a difference in where he has taken himself. He took himself to a place where he thought he would never be found. He took him to, he told Pam when she, when he spoke to her that he was in a safe place where they'll never find me. I mean, those are facts and circumstances you have to consider. So again, he's in Wisconsin and they hold him there past the 30 days. Can you prosecute? Yeah, I would say yes. And the only difference between the two is they held him. Right. So again, what I'm asking you is you're saying the difference and the ability for the state to prosecute in my hypothetical situation is how fast the extraditing officer got him back to Chicago. Is that what you're saying? I think, I think, let me backtrack on that for a second. I think it would be, again, I think that's more of a situation not necessarily with the VOBB because you'd have to make the determination of where the willful failure to surrender would be. I mean, that's a different fact. How can he surrender if he's in the custody of law enforcement officer in another jurisdiction? Again, you have to look at what his, his, his blame is and what his fault is. And the fact that he's in it, the fact that he's in custody in another jurisdiction is necessarily of his own doing. It's of his own fault. It's of his fault. And he deserves to lose his life just because you jumped the gun and arrested him before the 30 days. And again, is that, is that, is that a, you know, a defense or a shield behind which the defendant should be able to hide? Possibility might be though. I mean, if he's in custody and he waives extradition, this isn't a case where he fought extradition. He waived extradition. He waived extradition. Jailer, take me back to Cook County. Let's go. And he doesn't get back until after the 30 days. Whose fault is it that he didn't get back? Could he have, could he have, did they allow him? Did the Hawaii authorities allow him to get on a plane and come back? No. No. Well, whose fault is it that he was there in the first place? It's his fault and for that he should lose his bond. The question is, can you prove beyond a reasonable doubt that he failed to appear? That's your, that's your obligation. It's, and my, my question is how can you possibly prove beyond a reasonable doubt that he willfully failed to appear if he was locked in a cell in another jurisdiction? I think, again, you can look at the facts and circumstances surrounding his conduct, what took him there. The jury can make those reasonable inferences or could look at, look at what he was going to do or not going to do based on his inability, his failures, your, any kind of travel arrangements. You can prove your element by predicting what he's going to do in the future. Is that what you're saying? I think you know, I think that's what you're saying, right? You can predict what he's going to do in the future and that's how you prove beyond a reasonable doubt that he failed, willfully failed to appear. Well, I think based on what he's going to do in a time that didn't even happen yet. That's where I go back to this within 30 days. I mean, I think you're, you have an argument that he, you know, like Justice Palmer said, whether he would have appeared, you know, and there's facts about whether his conduct is willful, but what does this within 30 days mean? And does that, under these facts, prescribe your prosecution because there's still time left on the clock when he gets picked up. So I think it's more of this within 30 days as opposed to we're talking about whether he, you know, his intent was to willfully fail to appear because you're still stuck with the statute, you know, having this 30 days. I think that's what the Radcliffe case is saying. Now, again, I think the Radcliffe decision, again, is distinguishable on that fact because within that 30 days, the defendant, he had nine days to appear and doesn't because he was told he didn't have to. I think that what the Radcliffe decision speaks to, and the Illinois Supreme Court holds in that, that it's a question for the trier of fact, and it's not a legal question as to whether or not those 30 days that you don't consider what the defendant did or did not do, his own conduct, his own blameworthiness within those 30 days. Let me ask you this. On the other case, there was another case that was argued. Were those fines subject to that or not? I believe so. I believe, and I'm not sure. I believe that the fines on the other case went to the VOOP, went to the violation of the order of protection. I think it, I believe it did. Well, this case was a combination of charges. That's correct. But then there's a separate other case. Yes. I think the fees and fines were already within respect to the other. Okay. But you don't, you believe these were improperly imposed anyway. Yes. Do you agree with that? Yes. Well, doesn't this nine day period in Radcliffe though, to some, to some extent militate against your argument because in Radcliffe, didn't the Supreme Court say, you know, taking the fact, as you said, the facts and considerations in the specific case, didn't the Supreme Court say that the fact that he was at large for nine days and failed to surrender himself doesn't lead to the conclusion that he wouldn't have surrendered himself within the 30 days? It did say that, but again, what the facts in Radcliffe were were that the defendant was told by his, by his attorney, the judge, the trial judge or the Supreme Court in reversing the trial judge found that because he was told by his legal aid attorney, that he would get a different court date and didn't have to come to court, that the fact that he had nine days didn't necessarily show that he wasn't going to willingly, will, willfully surrender. Well, what are those nine days mean though? That's a dependent walking around Cook County. It means he had nine days to do it, but he didn't will, it didn't show that he willfully failed to surrender because he was told he didn't have to go to court on that. I mean, this, this bond forfeiture would have been vacated by every single judge anyway, because he was in. Correct. He was in the House of Corrections. Yeah. I mean that that's going to be vacated no matter what. I would ask. So then the case has sort of no significance. If you, you know, you kind of take out this idea about the nine days and that there's still. Correct. Well, there's still time left, just like in this case, but. I would ask, I would ask this court not to find as a matter of law that that 30 days is unfettered without regard to what the defendant in this case, where he was, what he was doing, the fault he had, the blame he had in being where he was, which led to his arrest. Can I just ask you an interesting question about the standard of review? Because you just said, don't find this as a matter of law. In the Radliff case, the Supreme court ruled that the state had failed to prove an element beyond a reasonable doubt. That's correct. And the standard of review there would, would be no rational jury, wouldn't it be? It predated Jackson versus Virginia. So I believe the standard of review was unsatisfactory or I think whether the evidence was unsatisfactory to prove beyond a reasonable doubt. Today it would be no reasonable jury. Today it would be taking the evidence in the light, taking the evidence in the light, most favorable. Well, that's if, if, what if, what if we decide this is really a question of law regarding within 30 days, then what's our standard? If you find that there's a question of law, I don't know if you find it's a, I don't know. Well, either way, what would your position be? My position would be that this was a question of fact. No, I mean the standard of review. I'm sorry. What would your position be just what we just discussed? It would be in a viewing the facts in the light most favorable to the state. Let me finish. I'm sorry. No rational jury could, could reach this decision, right? Yes. And what about, let me ask you a question along those lines. I talked earlier about the fact that that the defense counsel asked for an instruction along these lines. It was not given. But the jury had a problem with this. The jury sent out a note and said, you know, talking about rational juries, the jury had a note and they, they sent out a note and they said, you know, can, can he be found guilty? I'm paraphrasing. You can correct me. Can he be found guilty? What did the note say? Okay. I would point out the jury sent out a note because the defense counsel, he didn't get the instruction on the non-IPI, which we would claim was completely within the trial judge's discretion and a proper exercise in the trial judge's discretion because that non-IPI was, was incorrect. It was incorrect the way it was written. But what happens then is during closing argument, the prosecutor argues the facts and when the defense attorney argues in closing the law to, to the jury, and I believe he argued it improperly. It's at page 0, 120 to 121 of the record, but he argues the law. And he tells the jury that, um, that, that I'll read you what he says. He says, you'll see the statute. It's clear as it can be the full 30 days to which to do that. If he does that, if he's back in custody within the 30 days and it's not just the custody of Cook County or the custody of the Chicago police department or the custody of the state of Illinois, if he's in anybody's custody within 30 days, the crime is not complete and he's not guilty of the crime. So if a person is incarcerated and unable to appear in court, this failure to appear is not willful, cannot be willful. It is innocent failure. It is an excusable failure and it is not an actionable failure for which you have criminal liability. That's the defense attorney's argument. So he argues that I believe that prompts the jury's question as to whether or not, um, they ask if the defendant is arrested within 30 days of bail forfeiture, has he willfully failed to surrender himself for the purposes of proving a charge of violation of bail bond? Is the possibility of surrendering yourself a valid defense to the charge of violation of bail bond? What is the spirit of the law? So in response to that, originally the parties all agree that they should continue to deliberate. The trial judge then says, I have a duty to answer this question. They've given me a, they've asked a legal question, so I have to answer it. And then he does, he, then he answers it. Yeah. But how's the answer? He answers it, um, from Brodigan. He takes a case where, which is, I'm sorry, it's an error. No, I don't believe it is. Brodigan said Brodigan relied on a different statute. Brodigan relied on the bail forfeiture statute, the money, the money statute. And they said that the money statute has different language in it. The money statute talks about without fault, that he, that he failed to, uh, surrender without fault. And, and Brodigan said, well, if you leave the jurisdiction when you're not supposed to, you can't say you're without fault. That's correct. And so therefore he lost the money. What the trial judge did here is, is he gave an instruction in a violation of bail bond case that comes from a forfeiture of bail bond law. It's a different, it's a totally different law. And Judge Lacey told the jury, um, if he's in custody in another jurisdiction, he's not without fault. Did he say that? He said a defendant's absence from a criminal proceeding caused by imprisonment in a foreign state is not without fault. And it comes from Brodigan. And that's, that's, that's the wrong statute, isn't it? Well, I think that that, it's a different statute. I think they can be read, you know, somewhat together. It was not the VOBB statute. Didn't that answer direct the verdict? No, I think what it did was it answered. Once Judge Lacey said that, wasn't the case over? I don't believe so, Your Honor. I think what it did was it answered the legal question. Well, it put the factual determination back in the jury's hands. They came back with a verdict in 15 minutes. Oh, that's not technically an issue here because probably counsel, uh, wouldn't be able to get past the fact that they, didn't they all agree to this at some point or no? No. Well, I think it's the wrong instruction as well. I don't think this without fault has anything to do with violation of bail bond statute. I think again, I think the trial judge was attempting to, to answer the jury's legal question. I mean, the defense didn't prove, the defense didn't, other than objecting, didn't offer anything else in response to that. Didn't give him, didn't give him any other alternative instruction to give to the jury at that point. What are we supposed to do with that though? I mean, the trial judge gives an instruction that says something that's totally out of blue. There's no, there's no precedential support for it. There's no statutory support for it. There's no, there's no case law support for the idea that that fault has anything to do with this. And so what are we supposed to do with the fact that he gave the, you know, what happens when a judge gives, gives an instruction that's not based on the law? It's a problem, isn't it? You can make a determination, you know, if you find that it's improper, then you can, you can consider whether or not giving that improper instruction was harmless, was harmless error in this case. And the alternative we would be arguing that it was, that the verdict against this defendant was based on the fact and circumstances proved at trial. We'd ask you to affirm his condition. So you did argue that jury instruction was improper. Yes, Your Honor. It seems to me that if you were to find the jury instruction improper, then it would necessarily require the convictions to be vacated because it's the same legal point. But obviously in the alternative we would... Well, your first point is that the elements have not been established. Correct. And they can't be when the 30 day period was cut short. The Illinois Supreme Court in Ratliff did not look at what the defendant did on those nine days. It didn't say, Oh, was he just out in the streets and maybe this is willful and we'll cut the 30 days short here. That didn't happen at all. It is not dispositive that that defendant was in jail and Costa wasn't. They were both told by attorneys on the date of forfeiture, November 15th here, July 24th there. Is there a scenario under the statute where someone could be found guilty of this offense if they were arrested anytime before the 30 days? No, Your Honor. Why did the, well, the defendant filed a motion to dismiss, but didn't they at some point say we're withdrawing the motion to dismiss? I don't recall off the top of my head. I know it was litigated pre-trial. And again, during the jury instruction conference, but the trial court relied on Brodigan and that was improper. That deals with a completely different section of the criminal procedure code, not the criminal code. And notably the Illinois Supreme Court rejected the argument in Ratliff that that section 110-7G in Brodigan should be read together with section 32-10. And briefly as to... My notes tell me that that motion was denied. Is that correct? The motion dismissed? I'll trust your notes, Your Honor. Well, you know, the state says, wait a second. He's not even in the continental United States and there's only three days left. He doesn't have a plane ticket. Can't the jury come to a rational decision that he was not going to surrender? No, Your Honor. I mean, I have to grant Wisconsin and Hawaii are not the same places. Right. He's, I don't even know how many thousands of miles away he is, but he's in Hawaii and there isn't anything, at least in the record, that evidences an intent that he's going to return. There's no, you know, there's no plane ticket. There's no nothing. And he gets arrested, you know. So I mean, they say it's a question of fact and the jury decided against him. He wasn't going to appear. And you know, yeah, he was, I think it was, I forget how many days it was that he ultimately came back by extradition. But you know, since he, since he therefore doesn't come back within 30 days, when you determine the question of willfulness, you have to take into account what he was doing, that he was in Hawaii. He didn't have a plane ticket. You make that question, you make that factual determination. If the 30 days are surpassed, there's nothing saying that he's not. At the time of arrest. Correct. The government cannot arrest him for the 30 days are up and charge him with failing to appear within those 30 days when they have just made it physically impossible. It just flies at the face of basic notions of fairness. Like they have physically precluded him from doing something and then charging him for doing that. And just by the, the plain language, the defensive impossibility, possibly your honor, I could submit a supplemental brief on that. The legislature clearly said 30 days in subsection a of 32 dash 10. And then in subsection D they say, this does not preclude the state from seeking a contempt of court charges. This is a situation where you forfeit the money, you, that's your punishment. You lose the money, but there's not a criminal offense here. They would have to charge him with something else, contempt of court. As to the argument about Jack. Well, you know, but the thing is is that is the state makes the point that he testified and he said that he was going to come back and he said he was going to come back because his lawyer told him he had to come back and he had every intention of coming back. And you know, the jury made a credibility determination. He didn't believe it. Based on incorrect instructions of the law, your honor, based on Brodigan, which the Illinois Supreme Court has explicitly said is distinct and independent of this section 32 dash 10. Well, under that argument that that would just be a remand for new trial without the flawed instruction. Correct. Your honor, it can't be harmless error under the law as to jury instructions, but because the two issues are so intertwined, it just basically directed the verdict. And it also shows that they can't prove it here. They cut us 30 days short and that's improper. And also Ratliff was decided on the correct standard. The Jacksonville, Virginia decision of footnote 12 rejects the argument that in the light most favorable state is raised for the first time. It cites a case class of the United States from 1942. Ratliff was in the seventies. So that was already existing and used. It doesn't change the standard. They considered whether there was proof beyond a reasonable doubt in Ratliff. And I submit it was so good law. No further questions. All right. Case well argued, well briefed, and we will take it under advisement. Court stands in recess. Thank you.